UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

WANDA RENA CHRISTIAN and )
DORIS BRICE, )
 )
      Plaintiffs, )
 )
v. ) No. 2:13-CV-339
 )
AUTO-OWNERS INSURANCE COMPANY, )
 )
      Defendant. )

MEMORANDUM OPINION AND ORDER

The defendant, Auto-Owners Insurance Company ("Auto-Owners" or defendant), filed a Motion for Summary Judgment, [Doc. 33]. The plaintiff[1] has responded, [Docs. 38 and 46]. The matter is ripe for review. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I. FACTS**

Wanda Rena Christian's (hereinafter "plaintiff") father owned property located at 2600 Princeton Road, Kingsport, Tennessee (the "property"). On October 9, 2012, plaintiff's father quitclaimed the property to her for no monetary consideration. The plaintiff obtained insurance on the property on December 10, 2012, from the defendant. The tenants occupying the property left the premises in mid-January 2013. Once it became vacant, water and electricity to the house stopped, for it was listed in the past tenant's name.

---

[1] Plaintiff Doris Brice submitted an Affidavit that she does not have an ownership interest in the property in question. Thus, she admits she has no insurable interest in the property. Further, she had never paid a premium. Finally, she states that her name was placed on the policy as a result of the insurance agent's mistake. As such, the Court concludes that she is not a proper party in this suit.

The plaintiff and her husband visited the property on January 18, 2013. They locked the premises after leaving. On January 31, 2014, a fire occurred at the property, and the fire department determined the cause to be arson. The plaintiff reported the loss to defendant's insurance agents on February 1, 2013.

The insurance contract states:

> 3. Duties in the Event of Loss or Damage
>
> (a) You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . . .
>
> (8) Cooperate with us in the investigation or settlement of the claim.

On February 5, 2013, the defendant requested the plaintiff sign an authorization for release of information. The defendant sought utility customer records which would include logs of telephone calls as part of the defendant's investigation of the fire loss claim. The plaintiff told defendant's employee Sherry Fuss that before she signed the authorization, she would have to check the laws and rules of her profession.[2] As a massage therapist, the plaintiff had clients' contact information stored in her phone.

Plaintiff retained counsel. On February 20, 2013, plaintiff's counsel responded to Ms. Fuss's request for authorization. The response stated that the plaintiff was making every effort to comply with the policy. Her one concern was that her telephone records would include client information which she could not disclose. If she did so, she could be in violation of "HIPAA Law." A violation could result in the loss of her massage therapist license and subject her to

---

[2] Defendant disputes this fact. The defendant claims that the plaintiff told Sherry Fuss that she had already reviewed the laws and could not sign the authorization. [Doc. 34-2, pg. 46]

2

possible fines. As a result, on February 22, 2013, the plaintiff submitted the requested Proof of Loss form but did not submit the Authorization for Release form.

On March 4, 2013, the defendant issued a reservation of rights to the plaintiff and again requested she sign the authorization. The defendant also advised the plaintiff of her duty to cooperate under the policy. In response, the plaintiff, through counsel, on March 11, 2013, returned the signed authorization. However, she had stricken through the authorization provision permitting retrieval of the utility customer records, including the telephone logs. She also gave notice under Tennessee Code Annotated section 56-7-105, demanding that the policy be complied with and paid pursuant to its provisions.

Then, on March 21, 2013, the defendant wrote plaintiff's counsel to request an examination under oath and requested that she bring her cellular telephone and text messaging records with her. The defendant confirmed this request in writing on April 1, 2013. The plaintiff knew as of April 1, 2013, that defendant wanted her authorization so it could obtain her text messages and billing statements.[3] She did not realize she needed to keep all messages because she thought they could be obtained with a court order.

The defendant conducted the examination under oath on April 10, 2013. The plaintiff did not provide the defendant with any records of text messages. The plaintiff did not provide the requested authorization for those records. She explained at the examination that she was covered under HIPAA and could not give out information regarding her clients.

The defendant requested the information several more times. The defendant requested authorization on April 12, 2013. The defendant warned the plaintiff that failure to provide this authorization may be deemed non-cooperation under the policy. On April 25, 2013, the

---

[3] The defendant claims the plaintiff knew as of April 1, 2013, that the defendant sought the actual text messages and billing statements for the relevant time periods surrounding the fire loss, not just authorization.

3

Case 2:13-cv-00339-JRG-MCLC Document 50 Filed 04/21/16 Page 3 of 13 PageID #: 506

defendant again requested the authorization and warned of non-cooperation. The defendant stated its opinion that a massage therapist is not a covered entity within the meaning of HIPAA. Again, on June 12, 2013, the defendant requested the authorization. This time, the defendant warned that if it was not provided within 30 days, the defendant would consider this as non-cooperation and would deny coverage on that basis. The authorization was not provided within the 30 days, and the defendant denied coverage on July 15, 2013.

On August 9, 2013, the plaintiff changed her phone from a Droid to an iPhone when it was time for her to renew her cellular telephone contract. Plaintiff learned from Verizon when she attempted to get her telephone records from Verizon that Verizon only kept text messages for fifteen days. It is disputed whether she learned this fact when she bought a new phone or if it was at a separate visit. Regardless, she learned the fact two to three weeks prior to August 27, 2013.

On August 27, 2013, the plaintiff signed the authorization without limitation, for she finished getting verbal authorization from her clients at that point. She started seeking permission from her clients on February 6, 2013, after meeting with Ms. Fuss. She provided the signed authorization to the defendant on August 30, 2013.[4] Plaintiff admitted to being incorrect about HIPAA laws. Instead, she claims that it was her professional ethical obligations that prevented her from doing so, particularly Rule 0870-1-.19 of the Rules of Tennessee Massage Licensure Board.

Despite receiving authorization, on October 4, 2013, the defendant again requested all text messages from plaintiff's counsel for the period of January 29 through February 3, 2013.

---

[4] At plaintiff's deposition on July 17, 2014, she orally provided the names and telephone numbers of all of her clients except N____ K____, from whom she had not yet received permission. In addition, the defendant points out that the plaintiff only received verbal permission from her clients and not written permission as the Rule of the Tennessee Massage Licensure Board requires.

4

Plaintiff's counsel replied on October 25, 2013, that plaintiff did not have any text messages to produce. A Verizon employee had told the plaintiff that she would have to get deleted messages from the federal government. The plaintiff deleted about 50 text messages on a daily basis during January 29 through February 3, 2013, for this was her usual practice. She also deleted five to six hundred text messages from the Droid after February 5, 2013.

Plaintiff admits that the signed authorization as requested by the defendant was necessary to complete its investigation. However, she disputes that her actions spoliated evidence material to the investigation, for defendant's correspondence and requests for authorization never asked her to preserve her text messages. The plaintiff claims she thought the defendant could get paper copies of her text messages.

## II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat=l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the

5

necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court=s role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat=l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party=s pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is Amerely colorable,@ or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### III. ANALYSIS

#### A. Cooperation Clause

The defendant argues that summary judgment should be granted because coverage was properly denied due to the plaintiff's violation of the policy's cooperation clause. That clause is set forth above. Regarding cooperation clauses in Tennessee, the Tennessee Court of Appeals has noted:

6

> The reason for including a cooperation clause in the policy and for conducting examinations pursuant to it is obvious enough. The company is entitled to obtain, promptly and while the information is still fresh, all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims.

*Shelter Ins. Cos. v. Spence*, 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983). Thus, courts in Tennessee have "consistently upheld clauses requiring insureds to cooperate with their insurance companies." *State Auto Ins. Co. v. Bishop*, No. M1998–00900–COA–R3–CV, 2000 WL 279940, at *4 (Tenn. Ct. App. Mar.16, 2000). Tennessee courts view clauses requiring such cooperation as conditions precedent to recovering under the policy and hold that a breach of the clause substantially affecting the insurer's interests constitutes a complete defense to liability under the policy. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 327-28 (6th Cir. 2000). In addition to showing a lack of cooperation, an insurer must also have been prejudiced in order to defeat liability under the policy. *Id*. The burden to show prejudice does not fall on the insurer. Instead, the insured's failure to perform a duty under an insurance policy gives rise to a rebuttable presumption that the insurance company has been prejudiced. *Lester v. Allstate Prop. and Cas. Ins. Co.*, No. 3:12-cv-299, 2013 WL 3788607, at *5 (E.D. Tenn. Jul. 18, 2013) (citing *Alcazar v. Hayes*, 982 S.W.2d 845, 856 (Tenn. 1998). However, the insured can rebut the presumption of prejudice by presenting "competent evidence." *Talley*, 223 F.3d at 328.

The Court must consider the facts in the light most favorable to the plaintiff. Here, the policy states that the plaintiff must "[c]ooperate with us in the investigation or settlement of the claim." It does not define cooperation or set any limitations, such as timeliness. It is undisputed that the plaintiff did not sign the Authorization for Release form requested by the defendant on February 5, 2013, until August 27, 2013. However, the facts show that she failed to initially sign

7

the form due to her ethical obligations as a massage therapist. Although the plaintiff was initially mistaken as to the exact rule that prevented her from signing the form from the onset, the plaintiff eventually directed the Court to Rule 0870-1-.19 of the Rules of the Tennessee Massage Licensure Board. Failure to follow these obligations could result in loss of her license and, therefore, her livelihood, or subject her to fines. The records also reflect that she began attempting to receive permission from her clients to disclose the information and, thus, comply with the defendant's request that she sign the authorization form after the first initial request on February 5, 2013.

Based on these facts, there is a genuine issue of fact as to whether the plaintiff cooperated under the policy. *See Byrd v. Alpha Alliance Ins. Corp.*, No. 2:10-cv-0116, 2012 WL 360033, at *5 (M.D. Tenn. Feb. 2, 2012) (finding a genuine issue of fact as to whether insured cooperated when he inspected an oven, the alleged cause of the fire, and destroyed it in the process making it impossible for inspection by the insurer and, thus, impossible to make an arson determination). A jury could conclude from these facts, some of which the Court notes are disputed by the defendant, that the defendant "cooperated" under the terms of the policy. As such, the motion in this regard is DENIED.[5]

### B. Spoliation

The defendant also argues that summary judgment should be granted as a sanction for the plaintiff's spoliation of evidence, i.e. deletion of text and email messages sent and received from her cellular telephone before and after the fire.

The party seeking sanctions must show: (1) that the party having control over the evidence had an obligation to preserve the evidence at the time it was destroyed; (2) that the evidence was destroyed "with a culpable state of mind;" and (3) "that the destroyed evidence

---

[5] The Court will briefly discuss the prejudice to the defendant in relation to the spoliation issue.

was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks omitted). Notwithstanding state spoliation sanction standards, the federal district court has "broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). The Sixth Circuit Court of Appeals recognized this, "[b]ecause failures to produce relevant evidence fall along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652–53 (internal quotation marks and citations omitted). Therefore, a proper spoliation sanction, which can range from dismissal of the case to an instruction that the jury "may infer a fact based on lost or destroyed evidence," will serve "both fairness and punitive functions." *Id.*

Here, there is no dispute that the cause of the fire was arson. There is no question that the plaintiff had control over her text messages and emails before and after the fire. The question is whether she had a duty to preserve them at the time she deleted them. The record reflects that the plaintiff had a daily practice of deleting her messages. The record also reflects that as early as February 5, 2013, the plaintiff was aware that the defendant was interested in the content of her text and email messages to investigate her claim considering the fire was determined to be a result of arson, for the defendant asked her to sign a release to obtain the information. Nonetheless, it is true that the defendant never specifically asked her to preserve or not delete any of these messages or emails. In addition, the plaintiff had retained counsel at least by February 20, 2013. The plaintiff explains that she thought the defendant could obtain paper copies of her texts and emails through her cellular telephone company or from the federal

9

government even if she deleted them. Moreover, the plaintiff argues that the defendant has failed to show that it cannot procure these records "through use of the Authorization form that has been in its possession since August 2013 by following official protocol as described to Plaintiff by Verizon," her cellular phone carrier. [Doc. 38, pg. 15].

"An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation." *Beaven*, 622 F.3d at 553. The plaintiff has not cited any authority that this obligation is obviated if the information can be attained elsewhere. Further, the plaintiff had retained counsel who could have instructed her on her obligations. Regardless if the information came directly from her phone, from her cellular carrier, or from the federal government, the information was sought by the defendant, and the plaintiff was aware that the defendant sought this information as early as February 5, 2013. Thus, a reasonable insured acting under similar circumstances would have known that the information might be relevant to future litigation regarding the fire loss claim, the cause of which had been determined to be arson.

Second, the Court must determine whether the evidence was destroyed with the necessary culpable state of mind. Because the Court must consider the facts in the light most favorable to the plaintiff, the Court must accept that the plaintiff had a daily practice of deleting texts and emails. That being said, however, this Court notes other undisputed facts. The timing of the plaintiff signing the authorization form and of her learning that Verizon destroys text messages after fifteen days is worth noting. It is undisputed that she signed the form on August 27, 2013. It is also undisputed that she learned of Verizon's "fifteen-day" rule two to three weeks prior to the signing. Moreover, she signed the form without receiving written authorization from her clients to disclose their information, which her professional ethics rules require. The current

10

record reflects that she only had oral permission. Considering these facts, the Court concludes that plaintiff at least acted negligently.

Third, the Court must determine whether the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. This factor is more difficult. The defendant, of course, does not know the content of the texts or emails. It claims that the plaintiff "destroyed a necessary avenue of an arson investigation," [Doc. 44, pg. 4], and that it "considered the material to be relevant to its investigation," [Doc. 35, pg. 7]. Because the content is, of course, unknown, it is difficult to determine the prejudice to the defendant. As stated, the cause of the fire was determined to be arson. The plaintiff is the only insured who can receive proceeds from the policy. When considering these important facts and the record as whole, including the timing of the signing of the release and learning Verizon no longer had access to these messages, the Court determines that the evidence was relevant to the defendant's claim.

The Court has now concluded that the three spoliation factors have been met. However, the defendant's motion in this regard is still DENIED. This Court has broad discretion in determining the sanction, and it must correspond to the plaintiff's fault. Because the Court must consider the facts in the light most favorable to the plaintiff, the Court concludes that the granting of summary judgment is too harsh based on these facts. Instead, the proper sanction is an adverse inference instruction at trial. The contents that instruction will be determined at a later date.

### C. Bad Faith

The defendant's entire argument regarding the bad faith allegation consists of one sentence. It states, "In addition, as a matter of law, denial of liability for an insured's failure to

11

comply with requirements of the policy is not bad faith." [Doc. 35, pg. 7] (citing *Crumley v. Travelers Indem. Co.*, 475 S.W.2d 654 (Tenn. 1972)). The plaintiff merely responds that bad faith is an issue of fact for the jury and that there is substantial evidence from which a jury could conclude the defendant acted in bad faith. [Doc. 38, pg. 20]. Neither party has sufficiently briefed this issue in order for the Court to make a proper determination. In addition, because there are genuine issues of fact regarding the cooperation clause and denial of the claim, this Court declines to reach this issue. As such, the motion in this regard is DENIED.

### D. Tennessee Consumer Protection Act Claim

The plaintiff also alleges in the Complaint that the defendant's alleged deceptive trade practices violated the Tennessee Consumer Protection Act. The defendant argues that Tennessee Code Annotated section 56-8-113 expressly bars suit on these grounds. That section states:

> Notwithstanding any other law, title 50 and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a). Nothing in this section shall be construed to eliminate or otherwise affect any:
>
> (1) Remedy, cause of action, right to relief or sanction available under common law;
>
> (2) Right to declaratory, injunctive or equitable relief, whether provided under title 29 or the Tennessee Rules of Civil Procedure; or
>
> (3) Statutory remedy, cause of action, right to relief or sanction referenced in title 50 or this title.

Tenn. Code Ann. § 56-8-113 (2016). The plaintiff never addresses the defendant's argument in her Response. Thus, the defendant's motion in this regard is GRANTED.

### IV. CONCLUSION

12

For the reasons stated above, the motion, [Doc. 33], is GRANTED IN PART AND DENIED IN PART.

ENTER:

                                                            s/J. RONNIE GREER
                                                UNITED STATES DISTRICT JUDGE

13

Case 2:13-cv-00339-JRG-MCLC   Document 50   Filed 04/21/16   Page 13 of 13   PageID #: 516